**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

KEVIN J. O'BRIEN,                                     Index No.: 1:16-cv-06236

                                     Plaintiff,

              v.

HARRIS, ST. LAURENT & CHAUDHRY LLP AND
JONATHAN HARRIS,

                                  Defendants.
-------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

                                                                                THE SULTZER LAW GROUP, P.C.
                                                                                *Attorneys for Plaintiff*
                                                                                14 Wall Street, 20th Floor
                                                                                New York, New York 10005
                                                                                (212) 618-1938
                                                                                (888) 749-7747

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………...……………………………………………..I

TABLE OF AUTHORITIES……………………….........................................................II

Introduction………………………………………………………………………..……………1

Argument…………………………………………………………………………………….2

   I.    Plaintiff has not Violated FRCP. R. 11.  Indeed, Each of Plaintiff's Factual Averments has Evidentiary Support..………………………………………………………...….2

    1.  Paragraph 2 – "Defendants have refused to respond to this claim on the merits or even negotiate with Plaintiff in good faith."……………………………………………3

Paragraph 26 – "Defendants have breached this contract and the covenant of good faith and fair dealing implicit in it, by refusing to pay Plaintiff the wages owed to him, or even to negotiate with him in good faith despite repeated attempts by him to settle this dispute informally."  ………………………………………………………………………3

    2.  Paragraph 15 - "Defendants have fabricated deductions and offsets in a vain attempt to reduce Plaintiff's wages claim to zero."…………………………………………..6

    3.  Paragraph 13 - "As equity partner St. Laurent stated in a December 4 email to Plaintiff regarding the payments owed: We can do $50k on Monday [December 7] and an additional $35k against $170k in collected receivables also seems reasonable."…………7

    4.  Paragraph 1 - "He went on to collect for the firm all of the outstanding receivables owed to the firm by his clients."……………………………………………………………9

Paragraph 25 - "Plaintiff carried out his contractual obligations even after his departure by eventually collecting for Defendants all of the outstanding receivables owed to the firm by his clients."……………………………………………………………..9

CONCLUSION………………………………………..…………………………………11

# TABLE OF AUTHORITIES

### Cases

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    579 F.3d 143, 150 (2d Cir. 2009)……………………….................................................2

*Holmes v. Allstate Corp.,*
    2012 U.S. Dist. LEXIS 24883 (S.D.N.Y. Jan. 27, 2012)…………………………………..…2

*Kiobel v. Millson,*
    592 F.3d 78, 81 (2d Cir. 2010)………………………………………………………….....2

*Kropelnicki v. Siegel,*
    290 F.3d 118, 131 (2d Cir. 2002)………………………………...………………..2

*Storey v. Cello Holdings, L.L.C.,*
    347 F.3d 370, 388 (2d Cir. 2003)………………………………………...…………..2

### Statutes

FRCP R. 11………………………………………………………………………...………1, 2

FRCP R. 11(b)(3)……………………………………………………………………………2

FRCP 11(c)(3)…………………………………………………………………………….………1

Rule 11…………………………………………………………………….3, 6, 7, 10, 11

Rule 11(b)………………………………………………………………………………..1, 11

Rule 11(b)(3)………………………………………………………………………………2

Plaintiff Kevin J. O'Brien submits this Memorandum of Law in opposition to Defendants' November 3, 2016 motion for FRCP R. 11 sanctions.

## INTRODUCTION

Defendants have filed a meritless motion that should be denied in its entirety. As is evident from the annexed declaration of plaintiff Kevin O'Brien (and the 21 exhibits thereto), plaintiff has ample support for each of the six Complaint allegations challenged by defendants.[1]

It is the defendants and their counsel who have "crossed a line" and engaged in sanctionable conduct. To wit, defendants and their counsel have made blatantly false representations about conversations with plaintiff's counsel and about plaintiff's collection efforts,[2] among other topics, and defendants have even falsely characterized exhibits annexed to their motion.[3] Thus, it is defendants, not the plaintiff, who should be required to pay costs associated with their frivolous Rule 11 motion and the parties' pre-motion "safe harbor" communications.[4] Defendants' insupportable attack on plaintiff, which can only be characterized as vindictive, and the waste of judicial resources it has caused, should not go unpunished by this Court.

---

[1] Even without the benefit of the O'Brien declaration, a plain reading of many of the allegations at issue reveals that they are, on their face, neither false nor objectively unreasonable (e.g. "Defendants have refused to respond to this claim *on the merits* or even negotiate with Plaintiff *in good faith*").

[2] Among other misrepresentations, defendants have falsely asserted that undersigned counsel informed defense counsel that he had not reviewed pre-suit negotiation emails. This never happened. (Lipari Declaration, paragraph 4). And, defendants claim that they received payment in April from Client B and that "Mr. O'Brien played no role in HRC's collection of this outstanding balance." This statement is similarly false. (O'Brien Declaration, paragraphs 33 and 34).

[3] Specifically, defendants falsely characterize Andrew St. Laurent's December email exchanges with plaintiff. (O'Brien Declaration, paragraphs 23-26).

[4] FRCP 11(c)(3) provides that "on its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."

1

## ARGUMENT

I.     **Plaintiff has not Violated FRCP. R. 11.  Indeed, Each of Plaintiff's Factual Averments has Evidentiary Support.**

Defendants chiefly rely on Your Honor's decision in *Holmes v. Allstate Corp.*, 2012 U.S. Dist. LEXIS 24883 (S.D.N.Y. Jan. 27, 2012), which is inapposite inasmuch as it involved an attorney with a history of filing frivolous pleadings who was sanctioned because at least eight of his nine causes of action apparently had no merit.  Here, defendants are not asserting that plaintiff's causes of action lack merit.  Rather, they argue that they have documentary evidence refuting six factual averments within the Complaint.  Thus, FRCP R. 11(b)(3) is implicated.

FRCP R. 11 (b)(3) provides, in relevant part: "by presenting to the court a pleading…an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  To succeed on a Rule 11(b)(3) motion, the moving party must make "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quotation omitted).  A pleading violates Rule 11(b)(3) where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted).  A statement of fact within a pleading "can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)).

2

Moreover, "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." Id. at 83 (citation omitted).

The annexed declaration of Kevin O'Brien makes clear that the six factual allegations at issue are accurate and supported by evidence.

**1.**     **Paragraph 2 - "Defendants have refused to respond to this claim on the merits or even negotiate with Plaintiff in good faith."**

**Paragraph 26 – "Defendants have breached this contract and the covenant of good faith and fair dealing implicit in it, by refusing to pay Plaintiff the wages owed to him, or even to negotiate with him in good faith despite repeated attempts by him to settle this dispute informally."**

In their motion, defendants cite Complaint paragraphs 2 and 26 under the subheading "False Statements Regarding HSC's Refusal to Negotiate." And, defendants argue that "[plaintiff] has no right to file a Complaint in federal court making the false assertion that HSC 'refused to respond' to his claim or to 'negotiate' with him." If plaintiff had alleged only "defendant refused to respond," that allegation would be arguably incorrect. But, plainly, plaintiff did not make that allegation. Rather, plaintiff alleged that "defendants refused to respond…*on the merits"* and that defendants refused…to even negotiate…in *good faith*." Defendants' refusal to acknowledge these phrases and their impact on the paragraphs at issue renders defendants' sanctions application frivolous. Simply put, asserting that a litigant has refused to engage *on the merits* or *in good faith* is not refuted with documentary evidence showing simply that discussions occurred.

In any event, as the O'Brien declaration makes abundantly clear, plaintiff has evidentiary support for its assertions about defendants refusing to negotiate on the merits or in good faith.

3

Indeed, defendants engaged in a lengthy pattern of avoidance and obfuscation as to plaintiff's wage claim. (O'Brien Declaration, paragraphs 4-19).

Specifically, even before plaintiff gave notice on 12/4/15, he was owed money from the firm – a "true up" payment for the third quarter, estimated at the time to be over $18,000, plus his November draw, which was $35,000, for a total in excess of $50,000.[5] Defendant agreed to pay plaintiff on this obligation, as reflected in an email Andrew St. Laurent sent plaintiff on 12/4/15, after he had given notice (O'Brien Declaration, paragraphs 4-6, Exhibit 1). Andrew St. Laurent reiterated on 12/11/15 that plaintiff was owed "meaningful sums by the Firm." (O'Brien Declaration, paragraph 6, Exhibit. 2). However, after plaintiff's departure, the Harris Firm began to renege on its agreement as defendant Jonathan Harris became directly involved. (O'Brien Declaration paragraph 7, Exhibits 3 and 4). Plaintiff made it very clear, beginning no later than his 12/16/15 email that plaintiff would not meet with Harris or Andrew St. Laurent unless there was a basic agreement that plaintiff would be paid for his rightful share of the revenues he brought into the firm, which was his incontestable wages as a firm employee. (O'Brien Declaration, paragraph 8, Exhibit 5). As of 12/16/15, plaintiff was still talking only about the November draw plus the true up. But the firm never attempted to reach agreement on what plaintiff was owed, and as a result these amounts have never been paid to plaintiff. (O'Brien Declaration, paragraph 9).

Thereafter, in plaintiff's 1/18/16 email, plaintiff summarized what he knew, as of that date, about the fee revenue he had brought into the firm for work done in the fourth quarter – at the time, some $253,000 – and asked the firm to tell him what his share was on those fees, following the prescribed method used by the firm. (O'Brien Declaration, paragraph 10, Exhibit

---

[5] Plaintiff describes the formula in paragraphs 10 and 11 of his Complaint. (R. Doc. 1, paras. 10-11.)

4

6). He also said that the firm should let him know if it believed there were any valid offsets to what he was owed. Jonathan Harris responded with numbers riddled with self-serving errors, as plaintiff pointed out in his 1/27/16 email (O'Brien Declaration, paragraphs 11, Exhibit 7). Plaintiff reiterated therein that he needed from the firm "a serious, bottom-line payment proposal based on the data you and I have been discussing, which is not in dispute." Id. But, Harris responded instead, in emails on 1/27/16 and 1/28/16, with vague suggestions about a "separation agreement" between the law firms. Plaintiff again reminded him, in his 1/28/16 email, that he needed to know what they claimed he was owed as his share of received fee revenue "for there to be any constructive discussion." (O'Brien Declaration, paragraph 12, Exhibit 8). Harris' response this time was a 2/1/16 email sketching, in less than a page, subjects for a "separation agreement" between the two law firms, but again saying nothing about the wages plaintiff was owed. (O'Brien Declaration, paragraph 13). Although Harris had indicated he wanted to wrap this agreement up by March 1st, several weeks went by and plaintiff heard nothing from him. In fact, plaintiff never heard from him again about the "separation agreement."

    The proposed "agreement" produced nothing besides weeks of further delay. Id. Instead, Harris switched gears completely. Specifically, Evan Bolla sent plaintiff an email on 3/9/16 suggesting the firm could simply "assign" plaintiff "the outstanding $97,655.24 in receivables" from plaintiff's clients – when in reality plaintiff's clients' total receivables at the time were $66,000 or less and declining. (O'Brien Declaration, paragraph 14, Exhibit 9). In a 4/11/16 email to Harris and Andrew St. Laurent, having collected or arranged to collect for the Harris firm *all* the outstanding receivables owed to it by plaintiff's clients, plaintiff summarized the results: $277,643.75 in fees, of which his share (again, using the same method always used in the firm at that time) was $89,132.60. (O'Brien Declaration, paragraph 15, Exh. 10). Plaintiff said

5

in the email that he was open to settling the matter, "but it must be done soon." (O'Brien Declaration, paragraph 15).

Once again – as in the prior months – the Harris Firm refused to engage with these numbers in any way. In a 4/21/16 email, Evan Bolla claimed "discrepancies" in the numbers plaintiff presented on 4/11/16, but did not identify or explain any supposed error. (O'Brien Declaration, paragraph 16, Exhibit 11). Instead, in this same email, the firm tried yet another gambit, offering to either keep or assign its supposed "interest" in the Kalach case, a Ford O'Brien matter still being litigated in which neither the Harris Firm nor Ford O'Brien has a legal right to any percentage of the proceeds. As before, the firm failed to acknowledge plaintiff's claim to wages earned as a former nonequity partner. (O'Brien Declaration, paragraph 17).

Plaintiff sent the Harris firm an email on 5/6/16 offering to settle this matter for $80,000, rejecting the applicability of the Kalach matter to what was a straightforward claim for unpaid wages. (O'Brien Declaration, paragraph 18, Exhibit 12). Evan Bolla responded on 5/12/16 again offering to assign the Harris firm's "interest" in the Kalach matter and ignoring plaintiff's settlement proposal altogether. (O'Brien Declaration, paragraph 18, Exhibit 13). According to the docket, the Harris Firm has since filed a judgment lien in the Kalach case. (O'Brien Declaration, paragraph 19).

Accordingly, the factual averments in Paragraphs 2 and 26 are accurate and do not contravene Rule 11.

**2.    Paragraph 15 – "Defendants have fabricated deductions and offsets in a vain attempt to reduce Plaintiff's wages claim to zero."**

Defendants apparently do not dispute that they "fabricated deductions and offsets." Rather, they claim that "at no time" did they attempt to reduce the wage claim to zero. This is

6

untrue. As noted above, beginning in April 2016, the firm offered to assign plaintiff its nonexistent rights to the Kalach matter, which effectively reduced his $90,000 claim to zero. (O'Brien Declaration, Paragraph 20, Exhibits 11 and 13). In the latter email exhibit, the firm repeated this offer and ignored completely plaintiff's settlement proposal, which was for only a fraction of the wages it owes him.

Accordingly, the factual averments in Paragraph 15 are accurate and do not contravene Rule 11.

**3.      Paragraph 13 – "As equity partner St. Laurent stated in a December 4 email to Plaintiff regarding the payments owed: We can do $50k on Monday [December 7] and an additional $35k against $170k in collected receivables also seems reasonable."**

Defendants argue that plaintiff should be sanctioned because he did not note within the Complaint that St. Laurent sent an email on December 6, 2014 in which he wrote: "…it looks like Cassandre "double-credited" (to your favor) certain payments that were received in 3Q2015."

But, the annexed O'Brien declaration shows defendants have twisted and conflated the facts defendants presented to the court. Specifically, although a mistake was made early in plaintiff's discussions with Andrew St. Laurent concerning certain collections, the mistake *was the fault of the firm* and, in any case, was totally immaterial to St. Laurent's admission to plaintiff that "you were then and are now owed meaningful sums by the [Harris] Firm." (O'Brien Declaration, Paragraph 21, Exhibits 1 and 2). On 12/3/15, in the context of discussions regarding plaintiff's November draw and a true up payment for the third quarter, Andrew St. Laurent sent plaintiff figures regarding collections from the Harris firm's accounting manager. (O'Brien Declaration, Paragraph 22, Exhibit 14). In an email on 12/6/15, St. Laurent informed

7

plaintiff that he had discovered the firm had made a double counting error.  (O'Brien Declaration, Paragraph 22, Exhibit 15).  Plaintiff immediately examined the numbers and emailed him the same day, agreeing that the firm's numbers were in error and had inflated "my share of 3rd quarter revenue," which meant plaintiff's true up payment for that quarter should be $18,940.49 (O'Brien Declaration, Paragraph 22, Exhibit 16).

     Notably, the Harris firm's error is totally irrelevant to Andrew St. Laurent's admissions to plaintiff on 12/4/15 and 12/11/15.  His 12/4/15 email says two things in response to plaintiff's email of the same date (O'Brien Declaration, Paragraph 23-24, Exhibit 3): "We can do $50k on Monday [12/7/14]," which was an agreement to pay plaintiff the roughly $50k owed for plaintiff's third quarter true up plus his November draw (roughly $18,000, at the time, plus $35,000); and "an additional $35k against $170k in collected receivables [for the fourth quarter] also seems reasonable."  The first statement assumes that plaintiff's third quarter true up should be roughly $15k ($50,000 minus $35,000), which is in the range of what plaintiff calculated on 12/6/15 ($18,940.49) *after taking into account the firm's double counting error.*  (O'Brien Declaration, Paragraph 24, Exhibit 16).  And the latter statement, since it necessarily must have pertained to another distribution based on fourth quarter collections, is not affected by an overstatement of third quarter collections.  Id.  In other words, the firm's double counting correction, had it been known on 12/4/15, would not have affected the firm's agreement on 12/4/15 to pay plaintiff the sums quoted in the complaint.  By no means, then, was plaintiff's failure to mention the correction "a material omission." (O'Brien Declaration, Paragraph 25).

     As for Andrew St. Laurent's additional admission on 12/11/15 – "[Y]ou were then and are now owed meaningful sums by the Firm" – it is unaffected by the double counting error,

8

since Andrew made the admission five days *after* the error came to light on 12/6/15. (O'Brien Declaration, Paragraph 26).

4.      Paragraph 1  - "He went on to collect for the firm all of the outstanding receivables owed to the firm by his clients."

Paragraph 25 – "Plaintiff carried out his contractual obligations even after his departure by eventually collecting for Defendants all of the outstanding receivables owed to the firm by his clients."

Defendants' statement that "Mr. O'Brien [did] not collect receivables from HSC clients for the firm" is demonstrably false.   By April 2016, plaintiff had collected all of the outstanding receivables owed to the firm by his clients. (O'Brien Declaration, paragraph 28).  Indeed, plaintiff's efforts began early on.

In a December 4, 2015 email (the same day that plaintiff gave notice that he was leaving the firm), plaintiff sent the firm draft invoices for all unbilled time and expenses, which were ready to be finalized by accounting and sent to clients. (O'Brien Declaration, paragraph 29, Exhibit 17).   In a December 10, 2015 email, plaintiff reminded Andrew St. Laurent that it was in everyone's interest to send out the invoices. (O'Brien Declaration, paragraph 29, Exhibit 4). Yet, inexplicably, the firm waited until February 2016 before contacting plaintiff for approval to send out the invoices, which plaintiff immediately granted in a February 11, 2016 email.   (O'Brien Declaration, paragraph 29, Exhibit 18).  Apparently, if Defendants' motion papers are accurate, the firm did not actually send out the invoices until March.  (O'Brien Declaration, paragraph 30). Up through April 2016, plaintiff had numerous telephone and email conversations with clients about paying the Harris' firms outstanding bills.  (O'Brien Declaration, paragraph 31).

9

Further, defendants' statements about the check from Client A are inaccurate. In early April 2016, Client A paid its outstanding Harris firm bill ($19,040) after discussions with plaintiff. The client sent the check to plaintiff, but of course the check was made out to the Harris firm. On May 6, 2016, plaintiff mentioned to defendants that he had the check and would convey it to the firm. After the Harris firm contacted Client A, in July, the client contacted plaintiff and plaintiff advised Client A to make out a new check to the firm and send it to them directly, which is evidently what happened. Defendants could have contacted plaintiff about the check directly after May 6, 2016, but chose not to do so. (O'Brien Declaration, paragraph 32).

Defendants also claim that they received payment in April from Client B and that "Mr. O'Brien played no role in HRC's collection of this outstanding balance." (R. Doc. 20, p. 11). This statement, which also appears in paragraph 32 of Evan Bolla's Declaration, is itself sanctionable, given that Bolla has no way of knowing whether it is true or not, and in fact it is totally false. (O'Brien Declaration, paragraph 33). Plaintiff personally saw to it that the bill to Client B was paid. Indeed, in a March 11, 2016 email, plaintiff reached out to Client B and asked if the Harris firm had sent it an invoice, which the client had just received. Plaintiff then followed up by email on March 21, 2016 (after plaintiff had returned from vacation) and plaintiff and the client thereafter discussed the matter by telephone. (O'Brien Declaration, paragraph 34, Exhibits 19 and 20). Plaintiff followed up again by email to Client B on April 7, 2016 to ensure the bill had been paid, and plaintiff learned that the bill had just been approved for payment. (O'Brien Declaration, paragraph 34, Exhibit 21). If Defendants' representations are accurate, the firm eventually received payment a few weeks later. Id.

Accordingly, the factual averments in Paragraph 1 and 25 are accurate and do not contravene Rule 11.

## CONCLUSION

Given, *inter alia*, plaintiff's showing that the six disputed Complaint allegations have ample evidentiary support and are accurate, plaintiff's Rule 11 motion fails as a matter of law. Moreover, given that defendant's motion is meritless, to the point of bad faith, and includes blatantly false representations, the court can and should order defendants and their counsel to show cause why their motion has not violated Rule 11(b).

DATED: November 16, 2016

                                         Respectfully submitted,

                                         THE SULTZER LAW GROUP, P.C.

                                         Joseph Lipari /s/
By:_____
                                         Joseph Lipari
                                         Attorneys for Plaintiff
                                         14 Wall Street, 20th Floor
                                         New York, NY 10005
                                         (212) 618-1938
                                         liparij@thesultzerlawgroup.com