UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

KEVIN J. O'BRIEN,

                        Plaintiff,

        v.                                       No. 16-cv-06236 (LTS)

HARRIS, ST. LAURENT & CHAUDHRY LLP
AND JONATHAN HARRIS,

                        Defendants.
X------------------------------------------------------------------X


# REPLY MEMORADNUM OF LAW IN FURTHER SUPPORT OF MOTION
# FOR RULE 11 SANCTIONS

Evan W. Bolla
Andrew St. Laurent
Harris St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Tel: (917) 512-9472
ewbolla@sc-harris.com

*Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Rather than amend the Complaint to address its knowingly false and misleading allegations, Mr. O'Brien and his counsel argue those false allegations are carefully couched in such a way that sanctions are unwarranted, and double down on other false allegations.

At the heart of Defendant Harris, St. Laurent & Chaudhry LLP's ("HSC") motion for sanctions is plaintiff's false allegation that HSC did not engage in "good faith" or "on the merit" negotiations, when, in fact, HSC made numerous attempts to meet and discuss the issues and made multiple significant offers in compromise to Mr. O'Brien. Plaintiff argues that "good faith" and "on the merits" is a matter of opinion. However, while parties may have differing opinions as to positions, the terms "good faith" and "on the merits" are not so subjective as to render them solely a matter of opinion. As HSC's pre-litigation efforts are clear and well documented, Mr. O'Brien's allegations should be treated for what they are – knowingly false statements designed to damage HSC's reputation in the legal community.

In addition, rather than acknowledge that Plaintiff's initial demand to the firm was based on inaccurate calculations, Plaintiff denies responsibility for the calculation error. But that is not the issue. Regardless of who was at fault for the erroneous calculation, Plaintiff concedes the calculation was in error yet continues to rely on it in his Complaint. Similarly, Plaintiff continues to press claims based on an email sent by firm partner St. Laurent in reliance on the same inaccurate calculations. As all parties agree the calculations are inaccurate, it is plain Plaintiff may neither rely on the inaccurate

1

calculations in his Complaint, nor rely on statements made by Mr. St. Laurent based on those inaccurate calculations.

Mr. O'Brien and his counsel should be sanctioned and Mr. O'Brien required to amend his Complaint.

**ARGUMENT IN REPLY**

1. **False Statements Regarding HSC's Refusal to Negotiate**

*Paragraph 2 – "Defendants have refused to respond to this claim on the merits or even negotiate with Plaintiff in good faith"*

*Paragraph 26 – "Defendants have breached this contract, and the covenant of good faith and fair dealing implicit in it, by refusing to pay Plaintiff the wages owed to him, or even to negotiate with him in good faith despite repeated attempts by him to settle this dispute informally."*

In attempting to provide support for these allegations, Mr. O'Brien argues that the inclusion of the terms "on the merits" and "good faith" saves what would otherwise be a series of false allegations. Mr. O'Brien goes on to highlight correspondence between himself and HSC that only further demonstrate the falseness of these statements. While the full record of the negotiations is detailed in HSC's moving papers and speaks for itself, Mr. O'Brien's opposition makes various statements that must be addressed:

On December 16, 2015, at which time he had already left the firm, Mr. O'Brien wrote to the firm stating that he would not meet to discuss these issues, despite HSC's repeated requests to do so, until he was provided a "draw," which is a loan against future earnings. In response, that same day, HSC responded on the merits and in good faith, noting that, "As for the Q3 splits, you continue to ignore the additional 15,000 that was paid to you. Once the 15,000 is factored in, the amount owed for Q3 is $1,170. As for the Q4 splits, we can not calculate those or due a proper true-up until the quarter is finished.

2

In this regard, you initially requested a check for over $50,000 on one day's notice based on draft Q3 splits that had obvious double counting. This highlights the need to do this entire true-up process properly. We are not going to do it piecemeal." Bolla Dec. Ex. 10.

On January 19, 2016, HSC provided detailed numbers concerning receivables on cases Mr. O'Brien handled and certain outstanding expenses that it believed were Mr. O'Brien's responsibility. Bolla Dec. Ex. 11. Again, these numbers were provided in a good faith attempt to address issues with Mr. O'Brien and were clearly on the merits.

In response to a January 27, 2016 email from Mr. O'Brien, which raised questions regarding the numbers provided by HSC in good faith, HSC through Mr. Harris responded:

> I will not address here all the specific points in your email. I will address a few. As of December 31, I do not believe the firm had received any money from UBS. Happy to check if the money has now come in. As for Kalach, we are available to go over everything including receipts, expenses and the firm's share of any contingent recovery.
>
> With every partner who has left the firm we have sat down (or had calls), discussed and agreed on a separation agreement that covered any amounts owed, receivables, contingent cases, outstanding expenses, use of confidential information, etc. We are available to do so with you, and with Adam.

Again, HSC addressed the merits of Mr. O'Brien's claim and made clear good faith efforts to resolve them.

In response, Mr. O'Brien once again rejected HSC's offer to meet and discuss these issues and instead requested a written proposal, which HSC then provided. HSC's proposal sought to address all issues with Mr. O'Brien and his partner Adam Ford, and offered to pay Mr. O'Brien on money collected both prior to and after his departure under

3

the splits system. It remains unclear why this offer, which appears to provide Mr. O'Brien everything he is claiming is owed to him, was not only not accepted, but not even meaningfully responded to by Mr. O'Brien. Certainly this offer was made in a good faith attempt to resolve Mr. O'Brien's claim.

Finally, Mr. O'Brien and his counsel mischaracterize Mr. Bolla's May 5, 2016 email, which while seeking to address the Kalach contingency matter also clearly notes, "On the other hand, if you do not want to involve the Kalachs' contingency fee, we will file our lien and can continue the discussion of a direct payment. However, I think it makes sense to resolve what we are doing with the Kalach contingency fee before we continue those discussions." Bolla Dec. Ex. 22. As such, while certainly HSC wanted to address a potentially multi-million-dollar asset that Mr. O'Brien was evidentially interfering with, it at no time took a cash payout off the table or refused to continue discussions with Mr. O'Brien. Rather, Mr. O'Brien simply never responded to the May 5, 2016 email or the two follow-up emails.

That HSC attempted to address Mr. O'Brien's claims in good faith could not be clearer. In fact, HSC's good faith offers well exceeded its legal obligations. Mr. O'Brien's continuing refusal to even have a conversation with HSC and his decision to decline or simply ignore a number of different offers has led to this litigation.

While Mr. O'Brien is of course free to accept or decline any offer made by HSC, to claim that HSC refused to negotiate on the merits or in good faith is simply false. As detailed in HSC's moving papers, these statements were made for the improper purpose

of attempting to injure HSC's reputation, and were in fact reported by the press. Mr. O'Brien and his counsel should be sanctioned as a result.[1]

### 2. False Statement Regarding Offers Made to Mr. O'Brien

*Paragraph 15 – "Defendants have fabricated deductions and offsets in a vain attempt to reduce Plaintiff's wages claim to zero."*

Plaintiff doubles down and continues to claim that the firm attempted to reduce Plaintiff's wages claim to zero, arguing that Plaintiffs "offered to assign plaintiff its non-existent rights to the Kalach matter, which effectively reduced his $90,000 claim to zero." This statement is false, in two critical respects.

First, while Mr. O'Brien now claims the Kalach fee to be non-existent, Mr. O'Brien has valued the Kalach fee at over $500,000. Second, despite Mr. O'Brien and his counsel's claim to the contrary, HSC did not limit its offer to the Kalash's contingency fee (whatever its value), but rather made an offer of either the Kalash contingency fee or $35,000. Bolla Dec. Ex. 20. HSC then indicated in a follow-up email that while it believed the Kalash contingency fee should be addressed, "if you do not want to involve the Kalachs' contingency fee, we will file our lien and can continue the discussion of a direct payment". Bolla Dec. Ex. 22. Mr. O'Brien never responded to that email and the allegations both in his Complaint and in opposition to this motion for sanctions are knowingly false.

---

[1] O'Brien's counsel now apparently asserts he did review the email correspondence between the firm and O'Brien prior to filing the complaint. As intentional false statements are more worthy of sanctions than negligent statements, this only strengthens HSC's argument.

5

### 3. Material Omissions Based on Incorrect Calculations

*Paragraph 13 – "As equity partner St. Laurent stated in a December 4 email to Plaintiff regarding the payments owed: "We can do $50k on Monday [December 7] and an additional $35k against $170k in collected receivables also seems reasonable."*

Rather than admit to relying on a statement that Mr. O'Brien knew (likely then and certainly now) was based on incorrect information, Mr. O'Brien again doubles down on his false and misleading claims surrounding Mr. St. Laurent's email. Mr. O'Brien and his counsel claim in opposition that Mr. St. Laurent's email "was an agreement to pay plaintiff roughly $50k owed for plaintiff's third quarter true up plus his November draw." This, like the referenced allegations from Mr. O'Brien's Complaint, is simply false. Mr. O'Brien has himself admitted the error in these calculations (which included obvious double counting of receipts, and the failure to account for draws paid to Mr. O'Brien) and ultimately conceded that the amount that would be owed to him under the 3rd Quarter splits was $1,170.65, not $18,000 or any other number claimed in the Complaint or in his opposition. *See* Bolla Dec. Ex. 19 (Mr. O'Brien adopts the number previously presented by HSC, $1,170, as Mr. O'Brien's 3rd Quarter Splits figure).

As such, rather than simply state that Mr. St. Laurent indicated at the time, based on the information he had, that he believed HSC owed Mr. O'Brien "meaningful sums," Mr. O'Brien and his counsel knowingly forward figures and allegations based on significant errors. Such attempts to mislead the Court with figures Mr. O'Brien has long since conceded were incorrect is sanctionable, particularly in light of their decision to "double down" on those attempts in opposition.

6

**4.     Mr. O'Brien's Statements Regarding Collection of Receivables**

*Paragraph 1 – "he [Mr. O'Brien] went on to collect for the firm all of the outstanding receivables owed to the firm by his clients"*

*Paragraph 25 – "Plaintiff carried out his contractual obligations even after his departure by eventually collecting for Defendants all of the outstanding receivables owed to the firm by his clients."*

HSC believes Mr. O'Brien's pre and post-departure conduct fell far short of his fiduciary obligations.  However, based on the new assertions now presented by Plaintiff, HSC withdraws its request for sanctions based on Mr. O'Brien's allegations as to his efforts to collect receivables.  O'Brien for the first time has identified his efforts, including alleged phone calls, and has offered emails.  While it is not clear these efforts can accurately can be considered "collecting," they are sufficient to place these allegations outside the scope of Rule 11, and if Mr. O'Brien's counsel had provided this information after receiving HSC's Rule 11 letter (Bolla Dec. Ex. 25), this portion of HSC's motion would have been avoided. [2]

---

[2] Nevertheless, in response to Mr. O'Brien's claim that he simply forgot to convey the at issue check from Client A, and that HSC should have simply reminded Mr. O'Brien to send it, HSC would be remiss if it did not highlight that it sent Mr. O'Brien three separate emails after May 6, 2016 to continue discussions which were each ignored.

7

**CONCLUSION**

For the above stated reasons as well as those contained in HSC's moving papers, HSC requests the Court enter an Order of sanctions against Plaintiff and his counsel pursuant to Rule 11.

Dated: November 25, 2016
New York, New York

                                                ___s/_____

                                                Evan W. Bolla
                                                Andrew St. Laurent
                                                Harris St. Laurent & Chaudhry LLP
                                                40 Wall Street, 53rd Floor
                                                New York, NY 10005
                                                Tel: (917) 512-9472
                                                *ewbolla@sc-harris.com*
                                                *Attorney for Defendants*